# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

Chambers of
Matthew J. Maddox
United States Magistrate Judge
MDD_MJMChambers@mdd.uscourts.gov



101 West Lombard Street
Chambers 3B
Baltimore, Maryland 21201
(410) 962-3407

September 29, 2022

TO ALL COUNSEL OF RECORD

Re:   *Diane J. v. Kijakazi*
      Civil No. MJM-21-1193

Dear Counsel:

On May 16, 2021, Plaintiff Diane J. commenced this civil action seeking judicial review of the final decision of the Commissioner of Social Security Administration ("SSA," "Defendant") denying her claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (ECF 1). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 13), and Defendant's Motion for Summary Judgment (ECF No. 14).[1] I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. (D. Md. 2021).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under this standard, Plaintiff's motion will be denied, Defendant's motion will be granted, and the SSA's decision will be affirmed.

I.      **Background**

Plaintiff protectively filed her application for DIB on April 3, 2018, alleging disability beginning on May 11, 2018. (R. 14). Plaintiff's application was initially denied on August 27, 2018, and the initial determination was affirmed upon reconsideration on March 11, 2019. (R. 14, 91–94, 95–96, 97–99). Thereafter, Plaintiff requested an administrative hearing, and Administrative Law Judge ("ALJ") M. Krasnow held a telephone hearing on November 6, 2020. (R. 14, 30–53). Plaintiff, who was not represented by counsel, testified at the hearing. (*Id.*) An impartial vocational expert also appeared and testified. (*Id.*) Following the hearing, the ALJ issued a decision denying Plaintiff's claim for DIB on November 23, 2020. (R. 11–24). On April 7, 2021, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (R. 1–6). Plaintiff then filed this civil action seeking judicial review under 42 U.S.C. § 405(g).

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 5).

*Diane J. v. Kijakazi*
Civil No. MJM-21-1193
September 29, 2022
Page 2

## II.     The SSA's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining Plaintiff's disability claims, the ALJ followed the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

If the first three steps do not yield a conclusive determination of disability, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering all of the claimant's medically determinable impairments, regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of May 11, 2018, through her date last insured of September 30, 2020. (R. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, and meniscal tear of the right knee. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Then, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [Plaintiff] can stand and/or walk for a total of two hours out of an eight-hour workday; occasionally push and/or pull with the right lower extremity; frequently reach overhead with the left upper extremity; never climb ladders, ropes, or scaffolds, and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and/or crawl; and must avoid moderate exposure to hazards

such as dangerous machinery and unprotected heights.

(*Id.*) At step four, the ALJ found that through the date last insured, Plaintiff "was capable of performing past relevant work as a Personnel Clerk and as an Order Clerk," and this work did not require the performance of work-related activities precluded by her RFC. (R. 23). Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 11, 2018, through September 30, 2020. (*Id.*)

### III.     Standard of Review

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (citation omitted).

### IV.     Discussion

Plaintiff raises two issues: (1) whether the ALJ erroneously evaluated her subjective complaints; and (2) whether the ALJ erroneously assessed her RFC. (ECF No. 13-1 at 3–18). Plaintiff first argues that the ALJ improperly rejected her statements "regarding her subjective complaints on the basis that her complaints were not supported by objective evidence" and failed to explain how her daily activities supported the conclusion that she could not sustain an eight-hour workday. (*Id.* at 3–8).

#### A. Plaintiff's Subjective Complaints

To evaluate a claimant's subjective symptoms, such as pain, the ALJ must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (S.S.A., Mar. 16, 2016). *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). "First, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). "Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (quoting 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4).

In considering the intensity, persistence, and limiting effects of the symptoms, the ALJ examines the entire case record, including the objective medical evidence; the claimant's statements

*Diane J. v. Kijakazi*
Civil No. MJM-21-1193
September 29, 2022
Page 4

about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4–7. The ALJ can also consider factors such as daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *7.

Statements about the intensity, persistence, and limiting effects of symptoms will be evaluated in relation to the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *8. The ALJ considers whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence. *Id*. But the ALJ "may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." *Arakas*, 983 F.3d at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *5). The symptoms, including pain, will be determined to diminish claimant's capacity for basic work activities to the extent that the alleged functional limitations and restrictions due to the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *8*. In other words, while "a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably be expected to cause the pain the claimant alleges she suffers." *Lavinia R. v. Saul*, No. CV SAG-20-1083, 2021 WL 2661509, at *4 (D. Md. June 29, 2021) (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)).

Here, the ALJ first summarized Plaintiff's self-reported symptoms and hearing testimony, noting Plaintiff's allegations that pain in her spine, knees, left lower extremity, and arm affect and limit her ability to walk and sit for particular periods of time, to stand from sitting, to reach, and to lift particular amounts of weight. (R. 20). Following the two-step process, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id*.) But the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*.) To arrive at this conclusion, the ALJ considered Plaintiff's treatment history and observations made by providers during Plaintiff's medical appointments. (R. 20–21). The ALJ noted while Plaintiff's treatment history includes "numerous diagnostic images taken of her spine and knees, which reflected generally moderate to marked issues," her "treatment history and observations throughout her medical appointments do not support a finding that these had a debilitating effect on her work-related functioning." (*Id*.) Specifically, Plaintiff's "treatment for her spine, knee, and wrist issues has been generally conservative, limited predominantly to prescription medication, injections, and physical therapy," and "these treatments appear to have resulted in some improvement in her symptoms." (R. 21).

Furthermore, the observations of Plaintiff throughout her treatment appointments "have been generally unremarkable," and despite her "allegations of significant pain she was noted to be in no distress throughout her medical appointments." (*Id.*) With respect to Plaintiff's alleged limitations with walking and the use of a cane, the ALJ noted that providers typically described Plaintiff's gait "as only 'mild antalgic' and … as ambulating without issue on multiple occasions." (*Id.*) Plaintiff "was also noted to have normal or only mildly reduced strength and range of motion in both her upper and lower extremities despite the positive findings in the diagnostic images of her spine, knees, and wrist." (*Id.*)

Specific results from Plaintiff's consultative examination performed in February 2019 further support the ALJ's findings. Plaintiff "had slow ambulation and a limp," but "she was also noted to have full 5/5 strength in her upper extremities, lower extremities, and grip, as well as no pain with flexion of the knees and no sensory changes in her lower extremities." (*Id.*) The ALJ did not disregard Plaintiff's statements about her symptoms based solely the failure of objective medical evidence to substantiate her statements. *Arakas*, 983 F.3d at 95. The ALJ's evaluation of the extent of symptoms alleged by Plaintiff was based on both objective medical evidence and other evidence in the record, such as observations during Plaintiff's medical appointments and her treatment history. Because the ALJ's findings are supported by substantial evidence, Plaintiff's argument is unavailing.

Compared to the detailed discussion of Plaintiff's treatment history and observations recorded throughout her medical appointments, the ALJ's discussion of Plaintiff's daily activities is rather brief. The ALJ stated that Plaintiff "testified that she lives alone, and as such is able to perform the activities of daily living necessary to maintain a household. Additionally, she uses the stairs to come and go from her condominium two to three times per week, drives multiple times per week, and cares for two cats." (R. 21–22). This suggests that the ALJ did not primarily rely on Plaintiff's daily activities in the analysis of her subjective complaints, and they had little impact on the ALJ's findings. Therefore, the alleged failure of the ALJ to explain how Plaintiff's daily activities supported the conclusion that she could not sustain an eight-hour workday is at best a harmless error. *See Lavinia R. v. Saul*, 2021 WL 2661509, at *4 (finding harmless error when ALJ used plaintiff's activities of daily living to discount her subjective complaints without considering the nature and extent of those activities because ALJ did not exclusively rely on plaintiff's daily activities in making any of his findings).

### B. Plaintiff's Residual Functional Capacity

Plaintiff next argues that the ALJ failed to properly perform function-by-function assessment of her ability to work pursuant to SSR 96-8p in determining her RFC. (ECF 13-1 at 9–17). Plaintiff also avers that the ALJ failed to address her obesity in combination with her other impairments and failed to address pertinent evidence, such as her left wrist injury sustained from a slip-and-fall accident in October 2016 as well as her use of a cane. (ECF 13-1 at 11–17).

In assessing RFC, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at

\*5 (S.S.A., July 2, 1996). The ALJ is required to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at \*1. The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. at \*7.

The ALJ's RFC assessment followed the guidance from SSR 96-8p. As discussed above, the ALJ considered Plaintiff's function reports and hearing testimony concerning limitations in her ability to work due to pain, the slip-and-fall incident, and her emergency room visit. (R. 20–22). The ALJ reviewed Plaintiff's medical records and discussed diagnostic imaging of her spin, knees and left wrist, as well as associated issues such as degenerative narrowing of the disc space, a torn medial meniscus, tricompartmental osteoarthritis, spondylolisthesis, and advanced osteoarthritis. (R. 20–21).

Upon consideration of Plaintiff's treatment history and observations made during her medical appointments, the ALJ found no support for a finding that conditions reflected in Plaintiff's diagnostic images had any debilitating effect on her work-related functioning. (R. 21). The ALJ specifically pointed out that the treatment for Plaintiff's spin, knee and wrist issues were generally conservative. (*Id*.) Additionally, citing specific treatment results, the ALJ commented that these treatments appeared to have resulted in some improvement in Plaintiff's symptoms and in her walking. (*Id*.) The ALJ also considered Plaintiff's consultative examination and her activities of daily living in assessing her ability to walk. (R. 21–22). The consultative examination in February 2019 revealed that Plaintiff "had slow ambulation and a limp" but also "full 5/5 strength" in her upper and lower extremities and grip, "no pain with flexion of the knees and no sensory changes in her lower extremities." (R. 21). The ALJ noted that providers typically described Plaintiff's gait as only "mild antalgic" and found Plaintiff "ambulating without issue on multiple occasions" and "walking reasonably well" by October 2019. (*Id*.) Plaintiff argues that the ALJ failed to include any reference to the need for a cane in the RFC assessment, (ECF 13-1 at 14–15), but the ALJ did note Plaintiff's use of a cane in contrast with the above findings in support of Plaintiff's ability to walk. (R. 21). With respect to Plaintiff's daily activities, the ALJ noted Plaintiff's ability to perform activities necessary to maintain a household, Plaintiff's use of stairs to come and go from her residence and ability to drive multiple times per week. (R. 21–22).

Finally, the ALJ evaluated medical opinions and prior administrative medical findings regarding Plaintiff's ability to engage in exertional functions like pushing, pulling, carrying, walking, standing, and sitting. (R. 22). The ALJ considered the opinions of state agency medical consultants that Plaintiff can lift and carry "20 pounds occasionally and 10 pounds frequently, sit for six hours out of an eight-hour workday, . . . occasionally perform postural movements." (*Id*.) Additionally, the ALJ noted one of the medical consultants' opinion that Plaintiff "had limited pushing/pulling with her right lower extremity[,]" which the ALJ credited. (*Id*.) The ALJ noted a difference of opinion between the medical consultants regarding how long Plaintiff could stand and/or walk per workday, with one consultant opining two hours and the other opining four hours.

(*Id*.) Ultimately, the ALJ adopted the more conservative of these two opinions in the RFC, finding that Plaintiff can stand and/or walk for a total of two hours out of an eight-hour workday. (*Id*.) To the medical consultants' credit, the ALJ noted consistency between their findings and the observations of Plaintiff at her medical appointments and consultative examination. (*Id*.) Contrary to Plaintiff's assertions, the limitations on Plaintiff's abilities to sit, stand, walk, lift, carry, push and pull were discussed and assessed in connection with her RFC, as were the restrictions on overhead reaching with her left upper extremity. (R. 20–22).

Based on "the totality of the medical evidence of record," the ALJ found that Plaintiff had "treatment and some marked findings in the diagnostic images of her lumbar spine and bilateral knees, a history of a torn right knee meniscus, and issues with her left upper extremity, supporting some limitations to her residual functional capacity." (R. 22). The ALJ then concluded that the claimant is limited to only light work with these limitations, "as well as additional limitations to standing/walking two hours to accommodate her mildly antalgic gait, limited pushing/pulling with her right lower extremity to accommodate her torn meniscus, and limited overhead reaching with her left upper extremity to accommodate her left wrist arthritis." (*Id*.)

The ALJ acknowledged that Plaintiff has a history of obesity, as evidenced by numerous Body Mass Index ("BMI") findings of over 30. (R. 17). The ALJ did consider "the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 19-2p." (*Id*.) However, since "there is no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning," the ALJ concluded that Plaintiff's obesity is not a severe impairment. (*Id*.) Nonetheless, the ALJ stated that Plaintiff's "weight, including the impact on [her] ability to ambulate as well as her other body systems, has been considered within the limitations" of her RFC. (*Id*.)

Plaintiff fell on ice in 2016 and injured her left wrist. She had an x-ray and an MRI performed on her left wrist and was evaluated for Kienbocks disease. (R. 18, 20). The treating professional did not think her condition presented a true Kienbocks type problem but something "more related to an underlying arthritis." (R. 18). Plaintiff "was advised to wear a left wrist splint as much as possible." (ECF 13-1 at 14). The ALJ concluded that Plaintiff does not suffer from Kienbocks disease, but osteoarthritis, an impairment the ALJ found to be severe. (R. 18). The ALJ also discussed the diagnostic images when analyzing Plaintiff's treatment history. (R. 20). Plaintiff argues that the ALJ failed to mention other relevant observations from her doctor and omitted her testimony about her abilities to handle or finger objects with her left upper extremity such as how much she can lift or carry. (ECF 13-1 at 14). To the contrary, the ALJ did summarize Plaintiff's function reports and her testimony, including specific details about her ability to stand, sit, walk, and lift. (R. 20). Moreover, not only was this impairment addressed, but it was also accommodated through the limitation on overhead reaching with her left upper extremity. (R. 22). Plaintiff disputes the level of specificity of the ALJ's discussion concerning her allegation of the injured left wrist, but such reweighing of the evidence falls outside the scope of this Court's review of the ALJ's decision. *See Johnson*, 434 F.3d at 653; *Craig*, 76 F.3d at 589.

Plaintiff has failed to demonstrate that the ALJ erred in determining her RFC. Therefore,

*Diane J. v. Kijakazi*
Civil No. MJM-21-1193
September 29, 2022
Page 8

remand is not warranted on this issue.

### V.      Conclusion

     Because there is substantial evidence to support the ALJ's findings and the findings were reached through application of the correct legal standards, Plaintiff's Motion for Summary Judgment (ECF 13) will be denied, and Defendant's Motion for Summary Judgment (ECF 14) will be granted. The SSA's decision will be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

     A separate Order will follow.

Sincerely,

/S/

Matthew J. Maddox
United States Magistrate Judge